# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

GEORGE CLINTON, an individual
and MALBIZ MUSIC, a corporation

Case No. 499CV242-RH

Plaintiffs,

ARMEN BOLADIAN, an individual and
BRIDGEPORT MUSIC, INC., a Michigan
corporation and DOES 1 through 10 inclusive,

Defendants.

BRIDGEPORT MUSIC, INC. a Michigan
corporation, et. al.,

Counter claimants,

vs.

GEORGE CLINTON, an individual, et. al.,

Counter-Defendants.

---

## PLAINTIFFS' OPPOSITION TO MOTION
## FOR SUMMARY JUDGMENT

Plaintiffs oppose defendants' motion for summary judgment on all counts of the complaint on the grounds that material issues of fact do exist which are in dispute and, as a matter of law, summary judgment is not permissible or applicable.

00 AUG -7 AM 9: 10

- 43 -

# MEMORANDUM OF LAW

## INTRODUCTION

This case involves the rights, including ownership of copyrights, in and to certain musical compositions, written in whole or in part by Mr. George Clinton. It is not in dispute among the parties that George Clinton was in fact the author or co-author of the subject musical compositions. The parties do however disagree as to whether or not George Clinton ever assigned or transferred his ownership interest in and to the subject musical compositions to Bridgeport Music, Inc. Mr. Clinton contends he did not, while Bridgeport Music, Inc. alleges that he did, on more then one occasion. However, for the purposes of this motion, we need only concern ourselves with the contract dated December 2, 1983, as it and only it is the focal point of this motion. See attached Affidavit of George Clinton.

In support of their motion, defendants rely solely on the petitions filed on behalf of George Clinton during his 1984 bankruptcy. Unfortunately, what the documents actually state and what defendants are telling us the documents say are not one in the same. The defendants conveniently rely on what, for the most part, was never actually stated or alleged by George Clinton in his filings, and draw inferences from such omissions and take liberty to otherwise fill in the gaps. Fortunately, the documents speak for themselves and we did not have to rely on the interpretation of defendants.

# ARGUMENT

Defendants contend that they are entitled to summary judgment on three grounds:

(1) Having filed schedules of assets and liabilities in the Bankruptcy Court in which he (George Clinton) stated that he had no interest in any tangible asserts and no claims, and that he owed substantial debts to defendants with no set off, Mr. Clinton is estopped from subsequently making inconsistent claims.

(2) There is sworn, uncontradicted testimony in the record that in 1983, Clinton irrevocably assigned all of his rights in such songs to Bridgeport.

(3) Mr. Clinton has no standing to assert his claims, which even if valid (which defendants deny), would remain the property of the bankruptcy estate as an undisclosed claim.

Before we carefully examine the defendants' arguments, let's look at the requirements for the granting of summary judgment.

In order to be entitled to summary judgment, it is well settled that the moving party must clearly demonstrate that, (a) there is an absence of any issue of fact; (b) the moving party is entitled to judgment as a matter of law; and (c) there is a necessity that the judgment be free from doubt. <u>West's Federal Practice Digest 4th</u>, West Publishing Co. (1991). If any of the foregoing is not met, then summary judgment is inappropriate. The argument that follows will clearly demonstrate that issues of fact do exist and that summary judgment would not be free from doubt.

# 1. THE SCHEDULES OF LIABILITIES AND ASSETS SPEAK FOR THEMSELVES AND CANNOT BE INTERPRETED BEYOND WHAT THEY STATE

Defendants' position in this instance rests largely on the premise that what plaintiff George Clinton did not list on the schedule of assets and liabilities in his 1984 bankruptcy filing makes an affirmative statement. Although plaintiff George Clinton denies that such was either the intention or in fact true, defendants' argument fails even if the fact were construed as they would have them.

Plaintiff George Clinton did not list ownership in any copyrights on his schedule in 1984. Defendants contend that this is a statement that George Clinton does not own any copyrights, and now he is estopped from claiming any ownership in the copyrights of songs that existed in 1984. However in this case, George Clinton is not claiming any ownership in such copyrights. George Clinton has always maintained that Malbiz Music, Inc., a corporation and therefore a separate entity, owns the copyrights in the subject musical compositions. Consequently, George Clinton is not asserting what defendants contend he is estopped from asserting. Clearly here judicial estoppel would not apply.

Defendants also make issue of the fact that George Clinton did not list any claims against defendants in the 1984 filing, yet now George Clinton contends that he was not paid royalties since 1969. If George Clinton's failure to list the claims against defendants for failing to pay royalties in his 1984 filing is construed as a statement that no royalties were due, then these statement are inconsistent. However, "the doctrine of equitable estoppel is applied with the

utmost caution and restraint", Drozd v. INS, 155 F.3d 81 (1998). Moreover, "estoppel is equitable doctrine and should not be given effect beyond what is necessary to accomplish justice between the parties". Maitland v. University of Minnesota, 43 F.3d 357 (1994). In this instance, the doctrine of estoppel would only preclude at the most, those claims pre-petition in the bankruptcy. Those claims arising after the filing of the bankruptcy petition would not be estopped from now being claimed. To accurately and fairly apply the estoppel doctrine, we must look at the bankruptcy filing as a snapshot in time and what was not stated in the filing being taken as a broad statement, but only a statement at that precise moment in time. Consequently, George Clinton would not be estopped from now claiming any royalties due after the filing of the bankruptcy.

With respect to the contracts not listed by George Clinton in the bankruptcy filing, the only contracts George Clinton would be estopped from now claiming in this case, would be any contracts not listed. George Clinton's statements in this case that, but for the earlier contracts with Bridgeport Music, Inc., no other contracts exist between Bridgeport Music Inc and him is consistent with not listing them in the bankruptcy. Again, estoppel based upon inconsistency with prior statements does not apply. Insofar as the earlier contracts George Clinton is contending he did have with Bridgeport Music, Inc., defendants also are contending such contracts existed. Here again, George Clinton current assertions that certain contracts with Bridgeport Music did not exist are consistent with the lack of listing contracts in the bankruptcy filing.

Defendants' second point in support of why defendants are entitled to summary judgment on the grounds of estoppel are "there is sworn, uncontradicted testimony in the record that in 1983, Clinton irrevocably assigned all of his rights in and to such songs to Bridgeport." Let's

look at this so-called sworn, uncontradicted testimony in the record. First of all, there is the self-serving affidavit of defendant Armen Boladian wherein he states that George Clinton signed the December 2, 1983 agreement. This is hardly uncontradicted testimony. The very reason why this case is here is that Boladian states there is a contract and that George Clinton states there is not contract. That clearly seems like a contradiction to me.

Secondly, defendants contend that George Clinton implicitly acknowledged the December 2, 1983 contract, in his opposition to the Leber-Krebs motion to set aside a fraudulent conveyance. Let's look at precisely what was contained in the reply.

> "1. Debtor (George Clinton) denies the allegation that any transaction entered into with Boladian d/b/a Bridgeport Music, Inc. by Debtor constituted a fraudulent conveyance."

How do you make the leap from I didn't make any fraudulent conveyances to I made this conveyance. In his attached affidavit, George Clinton states that he advised his bankruptcy attorneys that he never signed the December 2, 1983 agreement. His attorneys advised him that it was not necessary to contest the validity of the agreement, because the motion would file for technical reasons. Careful review of the reply indicates that paragraphs 2 and 3 of the reply deal with the technical deficiencies of the motion and it was for these reasons that the motion to set aside the conveyance was denied. Defendants have failed to provide any sworn uncontradicted testimony in which George Clinton acknowledged the December 2, 1983 contract. Granted, I would have preferred that the bankruptcy attorneys dealt with the issue of the validity of the December 2, 1983 contract head on back then, but they did what they thought was best and was successful in defeating the motion on technical grounds. **In re Evans**, 120 B.R. 817 (1990), the court held,

> "elements necessary for Chapter 13 debtor to assert
> judicial estoppel or estoppel by record against creditor
> In light of creditor's alleged prior statements or pleadings
> inconsistent with its claim were absent, .... creditor's
> inconsistent statements were either equivocal ... and creditor
> did not actually obtain relief on the basis of the alleged statements."

At the very least, Clinton's statement In the reply to the motion by Leber-Krebs to set aside the conveyance is equivocal and therefore is not inconsistent for the purposes of judicial estoppel or estoppel.

Defendants' third argument deals with the so-called lack of standing on the part of George Clinton. The fallacy of this argument is that Clinton is not claiming what defendants allege Clinton is claiming. Defendants erroneously believe that Clinton as an individual is claiming ownership In and to certain copyrights In the subject musical compositions. And by not claiming them on the schedules of his bankruptcy filing, he is either precluded from now claiming ownership or they should be the assets of the bankruptcy estate and therefore properly claimed by the trustee.

In actuality, there are two categories of musical compositions subject to this lawsuit. The first category are musical compositions that Clinton acknowledges were assigned to Bridgeport Music, but alleges that he was not paid all the royalties due him by Bridgeport Music. The second category are the musical compositions owned by Malbiz Music, another plaintiff In this case, and, who did not file bankruptcy. Malbiz Music is claiming that Bridgeport Music infringed on these copyrights and wrongly collected the royalties generated by these second category of musical compositions. Given the fact that Clinton did not claim copyright ownership of any musical compositions on his bankruptcy schedules is not In consistent with his position now. If the lack of listing of copyrights on the schedules is to be construed as not

owning any copyrights at the time of filing, that is consistent with his position that Bridgeport Music owned the earlier compositions and that Malbiz Music owned that second category of compositions. Accordingly, this argument is without merit.

## CONCLUSION

Defendants spend a great deal of their motion reciting the law, including the law set forth by the bankruptcy cases. And for the most part, do so accurately. However, were the motion fails is In its application to the facts of the case at bar. With perhaps one exception, the facts are inconsistent with the application of the law as stated by defendants. If the omissions by Clinton of certain information on his bankruptcy schedules can be taken as a statement, nothing Clinton is stating In this case is inconsistent with such statements by omissions. Clinton did not claim copyrights on his schedules because at the time he did not own copyrights. He did not acknowledge that the December 2, 1983 contract was valid, he only said he never entered into a fraudulent conveyance with Bridgeport Music.

Perhaps the only omission that might be construed as a statement inconsistent with his position now is Clinton's lack of listing the royalties owed to him by Bridgeport Music at the time of filing. At best, this court should only exclude those royalties due as of the filing of the bankruptcy and not listed, but not all royalties accruing after the filing of the schedules In bankruptcy.

Accordingly, plaintiffs respectfully request that this Court deny defendants motion for summary judgment.

Dated: August 2, 2000                    Respectfully submitted:

Donald K. Wilson, Jr.
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
(323) 931-6200

By _____
DONALD K. WILSON, JR.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been provided by U.S. mail to Barry Richard, Esq., 101 East College Avenue, Tallahassee, Florida 32301 and Joseph P. Della Maria, Esq., 55 West Monroe Street, Suite 3900, Chicago, Illinois 60603, this ____ day of August, 2000.

_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

GEORGE CLINTON, an individual
and MALBIZ MUSIC, a corporation           Case No.   499CV242-RH

Plaintiffs,

ARMEN BOLADIAN, an individual and
BRIDGEPORT MUSIC, INC., a Michigan
corporation and DOES 1 through 10 inclusive,

Defendants.

---

### AFFIDAVIT OF GEORGE CLINTON

I, George Clinton, having been first duly sworn, hereby testify and state as follows:

1. I am one of the plaintiffs in the case at bar.

2. On or about August 3, 1984, I filed for bankruptcy in the Bankruptcy Court in the state of Michigan. I had engaged attorneys Robert S. Hertzberg, Esq. and Michael Ryan, Esq. to represent me in the handling of my bankruptcy.

3. During the course of my bankruptcy, in February, 1985, my former managers, Leber-Krebs, Inc. filed a motion to set aside conveyance to Boladian d/b/a Bridgeport Music, Inc., which I purportedly entered into on December 2, 1983.

4. At the time the December 2, 1983 contract was shown to me, I advised my bankruptcy attorneys that I never signed the contract and that was not my signature. I also informed them that I had never signed any agreement with Bridgeport Music, Inc. assigning my copyrights since my early days as a songwriter back in the mid to late 1960's.

5. I recall being advised by my attorneys that we did not have to get into the validity of the December 2, 1983 contract because the motion was no good for technical reasons, namely that it was not brought in accordance with the rules of bankruptcy. I advised them again that I never signed the December 2, 1983 agreement and that was not my signature.

6. I recall that in the response to the Leber-Krebs's motion, no reference was made by my attorneys to the December 2, 1983 agreement. They simply said that I had not entered into any transaction with Armen Boladian d/b/a Bridgeport Music, Inc. that constituted a fraudulent conveyance. The balance of the response dealt with the technical reasons on not being in accordance with the rules of bankruptcy.

7. I recall that my attorneys were success in having the motion denied, largely due to the technical reasons the informed my of earlier.

8. At no time prior to December 2, 1983 or after, did I ever transfer or assign my interest in or to the copyrights still owned by Malbiz Music.

X _____
GEORGE CLINTON

Singed and sworn to before me in _____Leon_____ County, Florida, on August 3rd, 2000.

R. J. Selva
MY COMMISSION # CC832060 EXPIRES
May 2, 2003
BONDED THRU TROY FAIN INSURANCE, INC

_____
NOTARY
R. J. Selva